**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 2009-105 (WOB-JGW)**

**EILEEN BURDEN**                                                           **PLAINTIFF**

**VS.**                        <u>**MEMORANDUM OPINION AND ORDER**</u>

**OFFICER SCOTT PAUL**                                  **DEFENDANT**

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 16). Plaintiff has filed her Response (Doc. 18), and Defendant has filed his Reply (Doc. 20). The Court heard oral argument on this motion on September 12, 2011 and granted the motion. (Doc. 33). Pursuant to the Order of September 16, 2011, the Court now issues the following Memorandum Opinion and Order.

**I. FACTS**

In this action, Plaintiff Eileen Burden ("Plaintiff") alleges claims of unlawful arrest and malicious prosecution, pursuant to 42 U.S.C. § 1983, as well as state law claims of malicious prosecution and abuse of process, against Officer Scott Paul ("Defendant") for charging her with the violation of a statute under which she was expressly exempt.

The material facts are undisputed.  On July 5, 2008, Plaintiff and her daughter, Lacy Burden ("Lacy"),[1] were at Willie's Sports Café ("Willie's") in Independence, Kentucky. Willie's was very crowded that night because the City of Independence was holding its annual Fourth of July celebration. (Plaintiff Depo. Vol. 1, at 10).  To deter underage drinking, Willie's issued wristbands to patrons who were of legal drinking age and served alcoholic beverages in distinctive cups. (Transcript from Plaintiff's Criminal Trial, Doc. 16-1, at 9-12).[2]

In Plaintiff's underlying criminal trial, Annette Thompson ("Thompson"), a Willie's manager, testified that she observed Plaintiff give Lacy a drink of an alcoholic beverage. Specifically, Thompson stated that, while she was stocking supplies in the women's restroom, she witnessed a young girl, later identified as Lacy, come out of a stall with two cups

---

[1] In 2007, Lacy was arrested by two Independence police officers, Mark Hampton and Matt Hicks, after the police officers allegedly found a marijuana seed in her car during a drug sweep at her high school.  Lacy sued the two officers, claiming they fabricated the evidence and wrongfully arrested her.  That lawsuit was pending when the events giving rise to this case occurred. Ultimately, the state court granted summary judgment in favor of the officers; Lacy appealed and a decision is expected soon.  Although Defendant was aware of the lawsuit on July 5, 2008, he had no involvement in it.

[2] It is unclear whether the testimony given in Plaintiff's state criminal trial is admissible because it appears to constitute hearsay, *see* Fed. R. Evid. 801, and the Court lacks sufficient information to determine whether an exception applies that would render it admissible.  *See* Fed. R. Evid. 802.
   However, Plaintiff has not challenged the admissibility of this testimony and, in fact, recited these facts in her Response brief. Accordingly, the Court construes these facts as undisputed for purposes of this motion.  *See* Fed. R. Civ. P. 56(e)(2).

2

designated for alcoholic drinks; she was not wearing a wristband. (*Id.* at 8-12).

An older woman, later identified as Plaintiff, then came out of another stall. (*Id.* at 10). After Plaintiff washed her hands, Lacy handed her one of the drinks. (*Id.*). As they left the restroom, Plaintiff offered Lacy a drink from the alcohol-designated cup. (*Id.* at 11). Although Lacy initially refused, she then took a sip.[3] (*Id.* at 11-12).

Thompson notified her supervisor, Johnna Jansen ("Jansen"), about what she witnessed in the restroom. (*Id.* at 13). Another server recognized Lacy and informed Jansen and Thompson that Plaintiff was her mother. (*Id.* at 13-14). Jansen saw Lacy again later and concluded, based on her behavior, that she had been drinking. (*Id.* at 30). Specifically, Jansen stated that she "observed [Lacy] standing up by the liquor booth talking to two guys. She was hugging on one guy. She seemed stumbly, she smelled of alcohol." (*Id.* at 29). Concerned that Lacy was a liability risk, Jansen called Kenton County dispatch to request police to escort Lacy off the premises. (*Id.* at 30).

Defendant and two other officers, Officer Fuson and Officer Wood, arrived at Willie's and were led to Lacy. Officer Fuson attempted to escort Lacy off the premises, but she refused to

---

[3] Thompson admitted that she did not know whether alcohol was actually in the cup. (*Id.* at 18-19).

3

cooperate and a struggle ensued. Officer Wood and Defendant attempted to assist Officer Fuson, but Lacy continued to resist. (Police Report, Doc. 16-2). The officers eventually escorted Lacy to the parking lot adjacent to Willie's where, according to Lacy, they slammed her into a wall and tackled her to the ground. (Lacy Depo. at 37). Defendant does not deny that Lacy was placed on the ground, but he contends it was necessary to control her kicking. (Defendant Depo. at 58).

Plaintiff was not present when the police escorted Lacy to the parking lot but, after a bartender alerted her to the incident, she went in search of Lacy. (Plaintiff Depo. Vol. 1 at 87). Plaintiff stated that, when she first saw Lacy, she was against the wall, but by the time she reached her, Lacy was face down on the sidewalk next to the police cruiser. (*Id.* at 95-96). Plaintiff asked the officers about the circumstances of Lacy's arrest, but they would not respond, nor would they allow her near Lacy. (*Id.* at 105-07; Defendant Depo. at 79-80). Eventually, Lacy was transported to the Kenton County Detention Center.[4]

After the police cruiser left, Defendant returned to Willie's to thank management for their cooperation. While

---

[4] Lacy was charged with third degree assault, alcohol intoxication, and disorderly conduct. (*See* Guilty Plea, Doc. 20-1). Ultimately, Lacy pled guilty to the alcohol intoxication charge. (*Id.*). The assault and disorderly conduct charges were dropped on the condition that Lacy participate in a diversion program. (*Id.*).

talking to Thompson and Jansen, Defendant saw Plaintiff and identified her as Lacy's mother.[5] (Defendant Depo. at 84-85). Thompson told Defendant that she had seen Plaintiff provide Lacy with an alcoholic drink in the women's restroom earlier that evening. (*Id.* at 85-86). Defendant asked her if she was certain that it had been Plaintiff, and Thompson confirmed that it was. (*Id.*).

On July 8, 2008, Defendant filed a report with the county attorney for review, "to see if it fits the statute, and then to proceed with the criminal summons." (*Id.* at 91). The report included a description of the events giving rise to the charge, including that Plaintiff was Lacy's mother, and it charged that Plaintiff had violated § 530.070 of the Kentucky Revised Statutes, which provides, in relevant part:

> (1) A person is guilty of unlawful transaction with a minor in the third degree when:
>
>   (a) Acting other than as a retail licensee, he knowingly sells, gives, purchases or procures any alcoholic or malt beverage in any form to or for a minor. . . . *This subsection does not apply to a parent or guardian of the minor;*
>
>   (b) He knowingly induces, assists, or causes a minor to engage in any other criminal activity;

Ky. Rev. Stat. Ann. § 530.070 (West 2011)(emphasis added).

---

[5] Defendant knew both Plaintiff and her daughter because Lacy was his daughter's classmate. (Defendant Depo. at 40).

Defendant signed the affidavit supporting the criminal complaint, but the prosecutor prepared the complaint. (Defendant Depo. at 94). Both the complaint and the summons were issued on August 8, 2008.[6] (Doc. 16-9). Although Plaintiff was never arrested nor placed in police custody, she was summoned to and did appear in Kenton District Court on several occasions.[7]

Because the statute expressly exempts a parent, Plaintiff filed a motion to dismiss the charges on October 21, 2008. On November 5, 2008, the prosecutor amended the criminal complaint to charge Plaintiff with violating § 244.085(3) of the Kentucky Revised Statutes, which states,

> (3) A person under 21 years of age shall not possess for his or her own use or purchase or attempt to purchase or have another purchase for him or her any alcoholic beverages. No person shall aid or assist any person under 21 years of age in purchasing or having delivered or served to him or her any alcoholic beverages.

Ky. Rev. Stat. Ann. § 244.085(3) (West 2011).

On February 23, 2009, a bench trial was held, and the charges were dismissed on the motion of Plaintiff. She then filed this lawsuit on July 9, 2009.

---

[6] Defendant testified that the one-month delay was due to his leave from work to accompany his father, who was diagnosed with terminal cancer, to the hospital. (*Id.* at 99-100).

[7] Plaintiff does not recall how many times she had to appear in court, but she testified that it was several times due to the case being postponed. (Plaintiff Depo. Vol. 1 at 8).

6

## II. STANDARD FOR SUMMARY JUDGMENT

Under the federal rules, summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing motions for summary judgment, the Court must view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). However, even considering this perspective, the nonmoving party must provide more than a "mere scintilla of evidence;" there must be sufficient evidence on which the jury could reasonably find for the nonmoving party. *Dominguez*, 555 F.3d at 549.

## III. ANALYSIS

### A. § 1983 Claims

In order to establish a claim under 42 U.S.C. § 1983, a plaintiff must establish that a defendant: (1) was acting under color of state law, and (2) deprived her of rights, privileges or immunities secured by the Constitution or laws of the United States. *Fridley v. Horrighs*, 291 F.3d 867, 871 (6th Cir. 2002).

However, even if a plaintiff raises a triable issue as to whether a constitutional violation occurred, a defendant may still be protected by the doctrine of qualified immunity. This

7

doctrine provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Feathers v. Aey*, 319 F.3d 843, 847 (6th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))(internal quotation marks omitted).

Whether a defendant is entitled to qualified immunity depends on: (1) whether the plaintiff has established facts that demonstrate the defendant's conduct violated a constitutionally protected right; and, if so, (2) whether that right was clearly established such that, at the time the act was committed, a reasonable official would have understood that his behavior violated that right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

**1.  § 1983 Claim for Unlawful Arrest**

To prevail on her § 1983 unlawful arrest claim, Plaintiff must prove that she was seized without probable cause. *See Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010). Probable cause "exists if the facts and circumstances within the arresting officer's knowledge 'were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.'" *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995)(quoting *Beck v. Ohio*, 379 U.S. 89, 91

(1964)). Whether probable cause exists usually creates a jury question, "unless there is only one reasonable determination possible." *Id.* (citing *Yancey v. Carroll Cnty.*, 876 F.2d 1238, 1243 (6th Cir. 1989)).

For purposes of a § 1983 unlawful arrest claim, "an arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." *Everson v. Leis*, 556 F.3d 484, 498 (6th Cir. 2009) (quoting *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008)) (internal quotation marks omitted). When an officer lacks probable cause justifying the arrest for the crime charged, but has probable cause to support the arrest for a related charge, he is entitled to qualified immunity. *See Avery v. King*, 110 F.3d 12, 14 (6th Cir. 1997).

First, the Court notes that it is unclear whether Plaintiff was seized for purposes of the Fourth Amendment when she was summoned to appear before the state court.[8] However, assuming a

---

[8] *Compare DePiero v. City of Macedonia*, 180 F.3d 770, 789 (6th Cir. 1999) (concluding that the issuance of a traffic citation did not effect a seizure because the plaintiff was free to leave and would have been afforded a trial upon his court appearance) *and Martinez v. Carr*, 479 F.3d 1292, 1299 (10th Cir. 2007) (holding that the issuance of a misdemeanor citation requiring appearance at trial in lieu of arrest does not constitute a "seizure") *with Bacon v. Patera*, 772 F.2d 259, 265 (6th Cir. 1985) (holding that a jury could reasonably find that the plaintiff had been seized without probable cause when the plaintiff had been cited and served with summonses on five different occasions) *and Gallo v. City of Philadelphia*, 161 F.3d 217, 225 (3d Cir.

9

seizure occurred, Defendant is still entitled to qualified immunity because, although he lacked probable cause to support the initial charge, he had probable cause to charge Plaintiff with a violation of K.R.S. § 244.085(3).

Defendant lacked probable cause to charge Plaintiff with a violation of K.R.S. § 530.070(a) because, as a parent, she was plainly exempt from this statute. *See Pritchard v. Hamilton Twp. Bd. of Trs.*, 424 F. App'x 492, 506 (6th Cir. 2011). However, he had probable cause to charge Plaintiff with a violation of K.R.S. § 244.085(3). This statute provides that "[n]o person shall aid or assist any person under 21 years of age in purchasing or having delivered or served to him or her any alcoholic beverages." Ky. Rev. Stat. Ann. § 244.085(3).

There is no dispute that Lacy was under the age of twenty-one on July 5, 2008, which Defendant personally knew because Lacy was his daughter's classmate. (Defendant Depo. at 40). Defendant's observations of Lacy's behavior confirmed that she was intoxicated, and Thompson informed Defendant that she had seen Plaintiff give Lacy an alcoholic beverage.[9] (*Id*. at 85-86).

---

1998) (concluding there was a Fourth Amendment seizure when the plaintiff was required to attend court, post bond, contact pretrial services on a weekly basis, and was prohibited from traveling outside the state).

[9] Plaintiff's contention that Defendant lacked probable cause because Thompson was not a reliable witness fails. An officer can rely on an informant to establish probable cause so long as the officer can reasonably assure the issuing judicial officer "that the informant was credible and the information reliable." *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000). Furthermore, eyewitness statements are entitled to a presumption of

Based on the totality of these circumstances, Defendant had probable cause to believe that Plaintiff had "aided or assisted" in serving an alcoholic beverage to a person under the age of twenty-one in violation of the statute. Thus, because Defendant had probable cause to believe that Plaintiff violated K.R.S. § 244.085(3), it is immaterial that he lacked probable cause under K.R.S. § 530.070, even though that was the statutory violation cited in the initial charge, and Defendant is entitled to qualified immunity. *See Avery*, 110 F.3d at 14.

Additionally, the fact that Defendant did not further investigate the situation does not destroy probable cause as Plaintiff suggests. It is well-settled that, although an officer must consider all available information, both inculpatory and exculpatory, when making his probable cause determination, "once a police officer *has* sufficient probable cause to arrest, he need not investigate further," and failure

---

reliability and veracity and will provide probable cause unless an obvious reason exists for the officer to believe that the eyewitness was lying or mistaken. *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999).

Here, Thompson personally observed Plaintiff give Lacy alcohol, and Defendant had no reason to doubt the veracity of the information she provided or her credibility as a witness. (*See* Defendant Depo. at 26) (testifying that "[t]here was nothing about [Thompson's] appearance, behavior, smell, actions, anything that indicated to me that [she was] in any way under the influence").

Moreover, Plaintiff's argument that corroboration of Thompson's tip was necessary to establish probable cause fails because Thompson personally observed the criminal activity and was not an anonymous informant. *See United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (recognizing it was unnecessary to corroborate an informant's tip because the informant directly observed the crime and his name was revealed to the magistrate).

to further investigate does not negate probable cause. *Klein v. Long*, 275 F.3d 544, 551-52 (6th Cir. 2001).

Upon obtaining the information described above, which established probable cause that Plaintiff had violated the statute, Defendant had no duty to investigate any further.[10] Therefore, even though Defendant lacked probable cause to support the initial charge against Plaintiff, because he had probable cause to charge Plaintiff with a violation of K.R.S. § 244.085(3), he is entitled to qualified immunity as to this claim.

**2. § 1983 Claim for Malicious Prosecution**

The Sixth Circuit recognizes a § 1983 malicious prosecution claim under the Fourth Amendment. *Sykes*, 625 F.3d at 308. In contrast to a § 1983 claim for false arrest, a malicious prosecution claim is based on the "*wrongful institution* of legal process." *Id.*

To establish this claim, a plaintiff must establish: (1) initiation of a criminal prosecution against the plaintiff where the defendant "made, influenced, or participated in the decision

---

[10] In Plaintiff's Response, she attempts to create issues of fact by attaching affidavits sworn by herself, Lacy, and Vonda Pickens, an employee of Willie's. (*See* Doc. 18-1, 18-2, 18-3). Each affidavit in some way avers that Plaintiff did not serve alcohol to Lacy on the night in question. However, probable cause requires only that there were sufficient facts for the officer to reasonably *believe* a crime was committed, not that the crime actually was committed. *See Harris*, 513 F.3d at 511 (recognizing that a finding of probable cause requires only "that the evidence be sufficient to lead a reasonable officer to conclude the arrestee has committed or is committing a crime"). Therefore, as these affidavits do not address the reasonableness of Defendant's belief, they are irrelevant.

to prosecute;" (2) lack of probable cause supporting the prosecution; (3) as a result of the prosecution, the plaintiff "'suffered a deprivation of liberty' . . . apart from the initial seizure;" and (4) the matter was resolved in the plaintiff's favor. *Id.* at 308-09 (internal citations omitted). Malice is not an element of a federal malicious prosecution claim and, in fact, the defendant's subjective intent is irrelevant. *Id.* at 309-10.

Plaintiff's claim fails because a reasonable jury could not conclude that Defendant "made, influenced, or participated in the decision to prosecute." Defendant merely filed a report with the county attorney for "review . . . to see if it fits the statute, and then to proceed with the criminal summons," (Defendant Depo. at 91), and it was the attorney who chose to prosecute Plaintiff and approved the charge.

Plaintiff fails to provide evidence that Defendant in any way encouraged the county attorney to prosecute her. "[A]n officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's *truthful* materials." *Sykes*, 625 F.3d at 314. *See also McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005) (concluding that the defendant officers were not liable

for malicious prosecution when they merely turned over evidence to the prosecutor).

While Plaintiff argues that Defendant did not provide the prosecutor with *truthful* materials, this argument is not persuasive. Plaintiff takes issue with Defendant's statement in his affidavit that "after some investigation" he concluded Lacy had received alcoholic beverages, (Defendant's Affidavit in Criminal Complaint, Doc. 16-9), continuing to argue that Defendant failed to conduct any investigation other than interviewing Thompson. However, the statement in the affidavit is neither false nor misleading, as Defendant did investigate, even if he did not interview all individuals Plaintiff deems important.[11]

Because the affidavit truthfully states that Plaintiff was Lacy's mother, all relevant information was available to both the prosecutor and the judge. Therefore, Defendant only provided truthful materials to the prosecution, which cannot satisfy the first element of this claim. As Plaintiff cannot establish this element of her malicious prosecution claim, Defendant is entitled to summary judgment.

---

[11] Plaintiff's contention that Defendant influenced the prosecution because of his alleged negative relationship with the Burden family and to retaliate for Lacy's lawsuit against the Independence Police Department fails. No evidence establishes the existence of a bad relationship between Plaintiff and Defendant and, even if it did, the officer's subjective intent is irrelevant in a § 1983 malicious prosecution claim. *See Sykes*, 625 F.3d at 309-10. More importantly, Plaintiff provides no evidence that, even assuming these motivations existed, Defendant actually *influenced* the county attorney's decision to prosecute.

14

**B.   State Law Malicious Prosecution**

Additionally, Defendant is entitled to summary judgment on Plaintiff's state law malicious prosecution claim because she has failed to present sufficient evidence to allow a reasonable jury to find in her favor.

To establish a malicious prosecution claim under Kentucky law, a plaintiff must demonstrate: (1) the initiation or continuation of judicial proceedings; (2) by or at the encouragement of the defendant; (3) the termination of the proceedings in the plaintiff's favor; (4) malice by the defendant in the initiation of the proceedings; (5) lack of probable cause for the proceeding; and (6) damage as a result of the proceeding.  *See Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981).

Although lack of probable cause can result in the inference of malice, it does not create a presumption of malice, and a plaintiff must still prove that the defendant acted with actual malice.  *See Miller v. Jefferson Cnty. Police Dept.*, 569 S.W.2d 189, 191 (Ky. Ct. App. 1978).  Because Kentucky law has historically not favored the tort of malicious prosecution, the plaintiff must strictly comply with its elements.  *Davidson v. Castner-Knott Dry Goods Co.*, 202 S.W.3d 597, 602 (Ky. Ct. App. 2006) (citing *Prewitt v. Sexton*, 777 S.W.2d 891, 895 (Ky. 1989)).

Here, Plaintiff fails to provide any evidence that Defendant acted with malice and, in fact, she admits that she has no facts to support her theory that Defendant acted in retaliation for Lacy's lawsuit. (Plaintiff Depo. Vol. 2 at 32-33). On the contrary, Defendant's actions reflect that he acted in good faith. He filed his initial report, which acknowledged that Plaintiff was Lacy's mother, with the county attorney for a determination of whether the conduct constituted an offense. (Defendant Depo. at 91). Defendant's testimony reflects that he was simply unaware of the parent-guardian exception listed in the statute and was relying on the prosecutor to determine the proper charge. (*Id.* at 91, 105).

Thus, the record demonstrates that Defendant did not act maliciously in charging Plaintiff under K.R.S. § 530.070. *See Collins v. Williams*, 10 S.W.3d 493, 496 (Ky. Ct. App. 1999) (concluding that an individual who provided truthful information to the police was not liable for malicious prosecution because of an error in the charge chosen by the county attorney). Therefore, because Plaintiff has not raised any genuine issues of material fact as to this claim, and she cannot establish at least one element of the claim, summary judgment is appropriate.

### C. State Law Abuse of Process Claim

"Abuse of process is the employment of a judicial proceeding for some purpose other than for which it was intended by the law to effect." *Raine*, 621 S.W.2d at 902. To establish an abuse of process claim under Kentucky law, a plaintiff must demonstrate: "(1) an ulterior purpose and (2) a willful act in the use of process which is not proper in the regular conduct of the proceeding." *Simpson v. Laytart*, 962 S.W.2d 392, 394 (Ky. 1998). "Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of process is required and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion even though with bad intentions." *Id.* at 394-95 (citing W. Prosser, *Handbooks of the Law of Torts*, Section 121 (4th ed. 1971)). *See also* 13 David J. Leibson, Kentucky Practice: Tort Law, § 18:4, 903 (2d ed. 2008) (noting that the goal of abuse of process is to prevent improper use of a process that was facially justifiable).

In this case, there is no proof of any such collateral use of the process to force any action on the part of Plaintiff here. Therefore, summary judgment must be granted as to this claim. *See* Fed. R. Civ. P. 56(e).

Therefore, having heard the parties, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 16) be, and is hereby, **GRANTED**. A separate judgment shall enter concurrently herewith.

This 22nd day of September, 2011.



Signed By:
*William O. Bertelsman* W.OB
United States District Judge